# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| ELIZABETH A. WARTCHOW, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-08-094-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Elizabeth A. Wartchow requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court

---

[1] [1]Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on October 14, 1975, and was twenty-nine years old at the most recent administrative hearing. She has a high school education and previously worked as a jewelry clerk. The claimant alleges she has been disabled since June 30, 1997, because of Raynaud's phenomena, fibromyalgia, chronic fatigue syndrome, generalized joint stiffness, stress, depression, and pain and stiffness of the shoulders, neck, back and hips.

**Procedural History**

On July 7, 2000, the claimant protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Michael Kirkpatrick found the claimant was not disabled on February 8, 2002. The claimant appealed the decision to this Court in Case No. CIV-03-448-P, and the decision was reversed and remanded for further proceedings on October 14, 2005. ALJ Kirkpatrick conducted a supplemental hearing and again found the claimant was not disabled on November 23, 2005. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, that she could lift and/or carry ten pounds frequently and twenty pounds occasionally; stand and/or walk for at least six hours total during an eight-hour workday; and sit for at least six hours total during an eight-hour workday. The claimant's mental limitations made her "unable to perform detailed or complex tasks, but she [could] understand and perform simple tasks. She [could] interact with co-workers and supervisors at a superficial level, but require[d] a task-oriented job that d[id] not involve interaction with the general public." (Tr. 509-10). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform existing in significant numbers in the regional and national economies, *e. g.*, housekeeper, hand bander and bakery racker (Tr. 519).

## Review

The claimant contends that the ALJ erred by finding she had the RFC to perform substantial gainful activity. She argues, *inter alia*, that the ALJ failed to properly consider the opinions of consulting psychologist Dr. Annette Miles, Ph.D., as to the extent of her mental impairment. The Court finds this argument persuasive.

The record reveals that the claimant underwent a mental evaluation with Dr. C.F. Mynatt, M.D., in October 2000. He assessed the claimant with possible bipolar disorder

(mixed type, depressed phase, with possible minimal psychosis), generalized anxiety disorder, joint difficulties and fibromyalgia, avoidance of interaction with others, and a Limitation of Functioning ("LOF") score of 45. He noted the claimant had not responded to antidepressant medications, which indicated bipolar disorder of a mixed type, and that her condition was not expected to improve (Tr. 303-05). Following Dr. Mynatt's examination, a non-examining agency psychologist completed a Psychiatric Review Technique form and a mental RFC assessment in December 2000. The claimant was noted to be moderately limited in her ability to understand, remember and carry out detailed instructions and in her ability to interact appropriately with the general public (Tr. 312-14, 329-42). Another non-examining agency psychologist reached these same conclusions in May 2001 (Tr. 401-14, 415-17).

In March 2005, the claimant underwent a mental evaluation with Dr. Miles. She observed the claimant to have poor eye contact with blunted affect and slightly depressed mood. Her grooming was good and speech was logical and coherent. She noted the claimant had never had any mental health treatment, had problems sleeping, lacked energy, suffered panic attacks when dealing with unfamiliar people or places, and exhibited symptoms of obsessive-compulsive disorder based on the Maudsley, a self-report survey of obsessive-compulsive symptoms. She assessed the claimant with obsessive-compulsive disorder, panic disorder without agoraphobia, depressive disorder NOS, and a GAF score of 41. Dr. Miles concluded the claimant "[was] able to understand, remember, sustain concentration, and

persist. Due to anxiety disorders, her ability to socially interact and adapt to work situations is considered to be impaired." Dr. Miles did not expect the claimant's condition to improve (Tr. 556-58). She also completed a mental medical source statement in April 2005 and determined the claimant had moderate limitations in interacting appropriately with a supervisor, but marked limitations in interacting appropriately with the public and co-workers, responding to work pressures in a usual work setting and responding to changes in the work setting. She attributed the claimant's limitations in social functioning to her anxiety disorders (Tr. 559-61).

The ALJ found that Dr. Miles' "narrative examination findings ha[d] probative value," (Tr. 515), but nevertheless rejected the limitations she imposed on the claimant because: (i) she lacked a on-going treating relationship with the claimant; (ii) her mental status findings "were largely unremarkable[;]" (iii) her examination findings showed "the claimant was fully oriented, alert, and otherwise functional at an acceptable level[;]" (iv) her diagnosis of the claimant's obsessive-compulsive disorder was "based largely on [the] claimant's statements that her aunt had so been diagnosed[;]" (v) the mental medical source statement was nothing but a "check-off" form and it was unclear whether Dr. Miles was familiar with the form; and, (vi) the GAF score of 41 assigned to the claimant by Dr. Miles "d[id] not, per se, indicate a medical opinion of an inability to work[.]" (Tr. 514-15).

The Court finds that the ALJ's dismissal of Dr. Miles' opinions was erroneous for a number of reasons. First, the ALJ impermissibly substituted his own determination for that

of Dr. Miles when he made sweeping conclusions that the claimant's mental status findings "were largely unremarkable" and that Dr. Miles' examination findings showed "the claimant . . . [was] otherwise functional at an acceptable level." *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996), *citing Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 743 (10th Cir. 1993) and *Kemp v. Bowen*, 816 F.2d 1469, 1475 (10th Cir. 1987). *See also Allen v. Schweiker,* 567 F. Supp. 1204, 1209 (D. Del. 1983) ("First, conclusions 1, 2 and 3 are all improper because they represent the ALJ's personal medical judgments concerning the claimant's condition . . . It is the duty of the ALJ to choose between properly submitted medical evidence, but it is not his function to assume the role of a doctor . . . A layman such as the ALJ is not free to draw his own conclusions as to the meaning of these tests."), *citing Gober v. Matthews,* 574 F.2d 772, 777 (3rd Cir. 1978).[2]

Second, the ALJ misstated the evidence with regard to the claimant's diagnosis of obsessive-compulsive disorder, *i. e.*, that the diagnosis was made solely because the claimant indicated that her aunt had been diagnosed with the disorder. The was no evidentiary basis for this conclusion by the ALJ; on the contrary, Dr. Miles' administered a self-report survey of obsessive-compulsive symptoms to the claimant on which she endorsed thirty of thirty-four symptoms. *See, e. g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and

---

[2] It is clear from the limitations assessed by Dr. Miles on the medical source statement that she did not view the claimant as "functional at an acceptable level[,]" *i. e.*, she concluded the claimant had marked limitations in interacting appropriately with the public and co-workers, responding to work pressures in a usual work setting and responding to changes in the work setting (Tr. 559-61).

*Langley v. Barnhart*, 373 F.3d 1116, 1122 (10th Cir. 2004) (both noting "that a psychological opinion may rest either on observed signs and symptoms or on psychological tests") [citation omitted]. *See also Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005) (finding that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements") [unpublished opinion].

Third, contrary to the specific instructions of this Court in its original remand in Case No. CIV-03-448-P, the ALJ failed to adequately address a substandard GAF score assigned to the claimant. In this instance, Dr. Miles assigned a GAF of 41, even lower than the score of 45 originally assigned by Dr. Mynatt in October 2000.[3] The ALJ noted that "the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], but failed to mention that "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [emphasis added] [unpublished opinion], *citing Oslin*, 69 Fed. Appx. at 947. At a minimum, the ALJ should have considered whether the claimant's low GAF scores were *in fact* due to occupational factors. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold

---

[3] "[A] GAF score between 41 and 50 indicates [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [quotation omitted] [unpublished opinion].

a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted] [unpublished opinion].

Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's mental limitations as discussed above. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 31st day of March, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**